**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**WAYNE ANTHONY STEWART,**

> **Plaintiff,**

> **v.**                                                   **CASE NO.  24-3058-JWL**

**JORGE A. DOMINICIS, et al.,**

> **Defendants.**

**MEMORANDUM AND ORDER**

This is a pro se civil rights action under 42 U.S.C. § 1983 brought by Plaintiff Wayne Anthony Stewart, who is incarcerated at the Wyandotte County Detention Center (WCDC) in Kansas City, Kansas awaiting civil commitment proceedings. Plaintiff is hereby required to show good cause, in writing, why his claim related to beta blockers should not be dismissed for the reasons stated below. In addition, the Court has determined that proper processing of Plaintiff's remaining claim, which is related to the treatment of his hepatitis C virus (HCV) cannot be achieved without additional information from appropriate officials at the WCDC. Thus, the Court will direct the appropriate WCDC officials to prepare and submit a *Martinez* Report.

**I. Background**

As Defendants to this action, Plaintiff names Jerry Boyle, the chairman and founder of Correct Care Solutions (CCS), now known as Wellpath, a company that provides medical services for the WCDC; Jorge A. Dominicis, the CEO/President of Wellpath/CCS; Nurse Practitioner and Wellpath employee Amie Fabah-Ezeogu; Nurse Practitioner and Wellpath/CCS employee Alicia Jones; and Registered Nurse Dee Dee Gregory, Wellpath/CCS's Medical Department Administrator.  (Doc. 1, p. 1-3, 5, 7.) Plaintiff alleges the following factual background for his

complaint. In 2010, while Plaintiff was previously housed at WCDC, medical staff there were aware that Plaintiff had HCV and they monitored his condition. (Doc. 1-1.)

Plaintiff began his current term of confinement at the WCDC on February 8, 2018. (Doc. 1, p. 5, 9.) On November 25, 2018, Plaintiff submitted a grievance seeking treatment of his HCV and expressing his belief that, if untreated, it could "lead to irreversible physical damage and even life-threatening circumstances." *Id.* at 5; (Doc. 1-1, p. 1). Plaintiff stated in that grievance that there was a cure available for HCV. (Doc. 1-1.) The written response to the grievance states: "[Patient] informed that he is currently being monitored in chronic care for this condition. Will schedule [patient] for education with provider." *Id.*

According to Plaintiff, however, Wellpath's policy, practice, and custom is to not provide the direct acting antiviral drugs (DAA drugs) that cure HCV because of the cost of those drugs. (Doc. 1, p. 4.) Plaintiff alleges that Defendant Fabah-Ezeogu was following that policy when she denied Plaintiff's request for the DAA drugs despite knowing that leaving Plaintiff's HCV untreated posed a substantial risk of serious harm. *Id.* The denial of the DAA drugs allowed Plaintiff's HCV to progress to Stage F4, also called liver cirrhosis. *Id.* At some point, an unidentified "nursing staff member" told Plaintiff "'the only reason why the provider is electing not to provide []direct acting antiviral (DAA) treatment is due to the high cost of treatment.'" *Id.* at 10.

On March 25, 2019, Plaintiff submitted an inmate communication form requesting HCV "treatment[/]cure." (Doc. 1-2.) He explained that he was experiencing nausea, vomiting, fatigue, "extremely 'light colored' stools," and pain in his liver area. He asked to be scheduled for scans or ultrasounds, again asserted that a cure for HCV was available, and asked the medical department to "[p]lease [not] allow my [HCV to] deteriorate into fatal liver cancer." *Id.* The written response,

which appears to be signed by Defendant Gregory, was "Asked and [a]nswered." *Id.* In October 2021, Plaintiff missed a nephrology appointment that had been scheduled with the University of Kansas Health System. (Doc. 1-11.)

During a routine medical visit on a Thursday morning sometime prior to December 9, 2022[1], Plaintiff alleges that his heart rate registered as 39 beats per minute. (Doc. 1, p. 3.) The nurse who took Plaintiff's vitals immediately reported the heart rate to Defendant Fabah-Ezeogu, who sent Plaintiff back to his cell. *Id.* Approximately 24 hours later, a nurse took Plaintiff's pulse again and discovered that Plaintiff's heart rate was 37 beats per minutes. After the nurse reported the heart rate to Defendant Fabah-Ezeogu, Defendant Gregory took Plaintiff's pulse and informed Defendant Fabah-Ezeogu that she recorded 37 beats per minute as well. *Id.* Plaintiff was sent back to his cell, but approximately 3 hours later, Plaintiff was taken to the University of Kansas Medical Center (UKMC). *Id.*

Doctors at UKMC examined Plaintiff and determined that he "needed a pacemaker or he would die." *Id.* Because UKMC did not perform major medical procedures on weekends due to staffing limitations, the doctors planned to perform the procedure the following Monday morning. In anticipation of the procedure and on the doctors' orders, Plaintiff stopped taking his usual medications on Saturday. By noon on Sunday, Plaintiff's heart rate was 111 beats per minute. *Id.* UKMC doctors informed Plaintiff that he did not need a pacemaker and that his low heart rate was due to a beta blocker he had been taking; Defendant Fabah-Ezeogu had prescribed the beta blocker for Plaintiff. *Id.* Liberally construing the pro se complaint, it seems that UKMC may have

---

[1] Although Plaintiff does not identify the specific date of these events in his complaint, an inmate communication form he has attached to his complaint that concerns these events is dated December 9, 2022. (Doc. 1-3.) He has also attached an exhibit to the complaint that appears to indicate that these events may have occurred in August 2022. (Doc. 1-6.)

recommended testing related to Plaintiff's HCV; Plaintiff asserts this testing was not done until "recently." *Id.* at 6, 9.

On December 9, 2022, Plaintiff submitted an inmate communication form regarding his repeated requests for treatment of HCV, the repeated denials of those requests, and his experience with the beta blockers as detailed above. (Doc. 1-3.) He explained that HCV "get[s] wors[e] when untreated." *Id.* The written response, which appears to be signed by Defendant Gregory, was: "Medical follows certain policies and procedures for treatment. The process is reviewed and the provider determines if treatment is clinically indicated or the need to be monitored in the chronic care clinic is sufficient." *Id.*

On January 25, 2024, Plaintiff submitted a Wellpath health services request stating that he had "asked on several occasions that it be explain[ed] to me the stage of my cirrhosis, and its advance from 2018." (Doc. 1-12.) Defendant Jones replied, "I am taking the proper [and] necessary steps to get you treatment Mr. Stewart. That's one of the reasons why your blood keeps getting taken." *Id.*   On March 20, 2024, Plaintiff signed an informed consent to take Mayvert, "a medication used to treat the Hepatitis C virus." (Doc. 1-10.) The provider signature is that of Defendant Jones. *Id.*

The required court-approved form for a complaint under 42 U.S.C. § 1983 has a specific section for Plaintiff to articulate the individual count or counts he wishes to assert in this lawsuit. (Doc. 1, p. 8, 11.) In this section, plaintiffs are instructed to "allege . . . the . . . constitutional rights, privileges or immunities [that] have been violated" in each count and set forth the facts supporting each count. Plaintiff has, instead, written a narrative in these spaces concerning the failure to treat his HCV. *See id.* Liberally construing the pro se complaint, however, Plaintiff makes two allegations that Defendants violated Plaintiff's right to adequate medical care and were

4

deliberately indifferent to Plaintiff's serious medical needs. If this construction is incorrect, Plaintiff should so inform the Court as soon as possible.

First, Plaintiff alleges that his constitutional right to adequate medical care was violated by Defendants Dominicis and Boyle implementing and enforcing cost-based policies to deny Plaintiff HCV treatment, which they knew or should have known left Plaintiff at risk of serious harm, thus demonstrating deliberate indifference to a serious medical need. (Doc. 1, p. 1-2.) He further alleges that Defendants Fabah-Ezeogu, Jones, and Gregory knew that denying the HCV treatment left Plaintiff at risk of serious harm, but were deliberately indifferent to Plaintiff's serious medical needs and intentionally refused to provide, delayed, and/or prevented the treatment based on the cost of treatment and Wellpath policies. *Id.* at 4, 6-7. He further alleges that his current irreversible cirrhosis is a direct result of the decision to deny DAA drugs. *Id.* at 7.

Second, Plaintiff alleges that Defendant Fabah-Ezeogu violated his constitutional right to adequate medical treatment by prescribing beta blockers, which lowered Plaintiff's heart rate to the point where he was hospitalized and scheduled for heart surgery before doctors realized his low heart rate was due to the medication and not a condition requiring a pacemaker. (Doc. 1, p. 3-4.) As relief, Plaintiff seeks punitive and compensatory damages from all Defendants. *Id.* at 12.

### III. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*

*v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake,* 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir. 2008)(citing *Twombly,* at 550 U.S. at 570).

## IV. Analysis

### A. Denial or Delay of Medical Care

The right to custodial medical care [for pretrial detainees] is well settled. *See generally Estelle v. Gamble,* 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). "The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates." *Lance* [*v. Morris*], 985 F.3d [787,] 793 ; *see also Clark v. Colbert,* 895 F.3d 1258, 1267 (10th Cir. 2018) (explaining the Eighth Amendment includes "an entitlement to a certain minimum standard of medical care while incarcerated"). "Although pretrial detainees are protected under the Due Process Clause rather than

6

the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Olsen* [*v. Layton Hills Mall*], 312 F.3d [1304,] 1315 [(10th Cir. 2002)].

Prison officials violate the Constitution when they act with "deliberate indifference to an inmate's serious medical needs. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

*Estate of Beauford v. Mesa County, Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022).

To show unconstitutional deliberate indifference to a serious medical need, a plaintiff must establish two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022), *cert. denied* June 26, 2023.

The objective component focuses on the "seriousness of the plaintiff's alleged harm," and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm."

….

To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self* [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 834 [(1994)]). Generally, a medical need qualifies as "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)] (citation omitted).

*Paugh*, 47 F.4th at 1154-55. In addition, "[m]edical delays can be sufficiently serious if they cause substantial harm, such as 'permanent loss[] or considerable pain.'" *Lance*, 985 F.3d at 793. But delay in providing medical care does not violate the Eighth Amendment unless there has been deliberate indifference to the effects of the delay and the delay itself resulted in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez*, 430 F.3d at 1305. But a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. See *Estelle*, 429 U.S. at 106–07; *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968); *see also Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim). Relatedly, an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Estelle*, 429 U.S. at 106. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.*

### i. Beta Blockers Claim

To the extent that Plaintiff intends to argue a constitutional violation based on Defendant Fabah-Ezeogu prescribing beta blockers to Plaintiff or on her waiting more than 24 hours after the first report of low heartrate to transport Plaintiff to KUMC, the claim is subject to dismissal for failure to state a plausible claim for relief under 42 U.S.C. § 1983. Even liberally construing the complaint and taking all well-pled facts alleged therein as true, Plaintiff has not alleged facts that show that Defendant Fabah-Ezeogu was deliberately indifferent to a substantial risk of serious harm when she prescribed the beta blockers.

Additionally, although a low heart rate could indicate a serious medical need, Plaintiff has not alleged that he was completely denied treatment for his low heart rate. Rather, he appears to

argue that the constitutional violation occurred when Defendant Fabah-Ezeogu waited over 24 hours before having Plaintiff transported to KUMC for further examination and treatment. The Tenth Circuit has clearly explained that a delay in medical care for an inmate only violates the Constitution "where the plaintiff can show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. Mar. 6, 2001). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garret v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff has not alleged facts that show the delay in transporting him to KUMC resulted in substantial harm.

Accordingly, Plaintiff is required to show good cause, in writing, why his claim for relief in this matter that relates to the beta blockers should not be dismissed for failure to state a plausible claim for relief under 42 U.S.C. § 1983.

### ii. HCV Claim

The Court finds that the proper processing of Plaintiff's claims regarding treatment of his HCV—or the lack thereof—cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The Court will not order service of process at this time but will continue screening the complaint after receipt of the report ordered herein and Plaintiff's response to that report.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **June 10, 2024** in which to show good cause, in writing, why his claim related to beta blockers should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that the clerk of the court shall enter the Sheriff of Wyandotte County as an interested party on the docket for the limited purpose of preparing and

filing the *Martinez* report ordered herein. Upon the filing of that report, the interested party may move for termination from this action.

**IT IS FURTHER ORDERED** that**:**

(1)    Officials responsible for the operation of the WCDC are directed to undertake a review of the subject matter of the claims in the complaint related to Plaintiff's HCV:

      a.    To ascertain the facts and circumstances;

      b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint; and

      c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this complaint and should be considered together.

(2)    Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the WCDC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The WCDC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(3)    Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(4)    Authorization is granted to the WCDC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(5)     The Sheriff of Wyandotte County shall submit the *Martinez* Report no later than **June 28, 2024**, unless the time is extended by the Court. Plaintiff will then have to and including **July 29, 2024** in which to file a response to the *Martinez* Report if he wishes to do so. Upon the filing of the *Martinez* Report and any response by Plaintiff, or when the time for filing a response has expired, the Court will screen Plaintiff's complaint and issue further orders as appropriate.

**IT IS SO ORDERED**.

**Dated this 8th day of May, 2024, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**