IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WAYNE ANTHONY STEWART,

Plaintiff,

v.                                                Case No.  24-3058-JWB

JORGE A. DOMINICIS, *et al*.,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss (Docs. 76, 93) and motion to strike response (Doc. 87).  The motions have been fully briefed and are ripe for decision.[1] (Docs. 77, 81, 82, 83.)  The motions to dismiss are GRANTED IN PART and DENIED IN PART for the reasons stated herein.

I.    **Facts**

Plaintiff is currently housed at Larned State Hospital.  The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated at the Wyandotte County Detention Center ("WCDC").  Plaintiff's amended complaint brings claims against Defendants for violating his Eighth Amendment right to be free from deliberate indifference to medical needs.  Specifically, Plaintiff asserts that Defendants failed to treat Plaintiff's Hepatitis C virus ("HCV"), that the lack of treatment has resulted in end stage cirrhosis, and that he was been denied a cure.  (Doc. 73-1 at

---

[1] Although Plaintiff did not respond to the Wyandotte County Defendants' motion to dismiss or the motion to strike, the time for doing so has now passed.

8–11.)[2]  The facts set forth herein are taken from Plaintiff's amended complaint or exhibits to

Plaintiff's original complaint.

Plaintiff was placed in detention at the WCDC on February 8, 2018.  Plaintiff alleges that

his HCV status was documented upon his arrival.  (Doc. 73-1 at 41.)  Several months later, on

November 25, 2018, Plaintiff filed a grievance regarding his medical care.  Plaintiff stated that

there was "an excessive risk to my health or safety due to my serious medical condition," HCV.

(Doc. 73-1 at 14.)  Plaintiff stated that the medical staff at WCDC are aware of his HCV but yet

"nothing has been done."  (*Id.*)  Plaintiff asserted that he faced "serious health consequences and

even death if my HCV remains untreated."  (*Id.*)  In response to his grievance, staff stated that

Plaintiff was informed that his condition was currently monitored and that an appointment for an

evaluation would be scheduled.

On March 25, 2019, Plaintiff filed another grievance.  In this grievance, he complained of

nausea, vomiting, fatigue, and pain in his liver area.  (*Id.* at 15.)  Plaintiff requested that he receive

a scan or ultrasound as this is typically required for patients with HCV.  Plaintiff also asked that

his HCV condition not be allowed to deteriorate into fatal liver cancer.  (*Id.*)  Staff responded that

they had answered his request.  On December 9, 2022, Plaintiff filed another grievance in which

---

[2] Previously, the court identified Plaintiff as bringing two separate deliberate indifference claims: one for the prescription of beta blockers by Defendant Fabah-Ezeogu and a second for the lack of treatment for his HCV. (Doc. 3 at 9.) Upon screening, the court ordered Plaintiff to show cause as to why his claim related to beta blockers should not be dismissed for failing to state a claim. (*Id.*) Plaintiff did not do so and the court dismissed this claim without prejudice. (Doc. 11 at 2.) In his amended complaint, Plaintiff's section relating to claims does not assert a claim pertaining to beta blockers; however, he has set forth facts regarding this event as it pertains to Defendant Faba-Ezeogu. (Doc. 73-1 at 3.) Upon review of the allegations, the court finds that these facts do not state a claim for the reasons the court previously relied on in dismissing the claim. In sum, Plaintiff alleges that his heart rate dropped after the prescription of the beta blockers but that Defendant Fabah-Ezeogu did not send him to the hospital promptly. Plaintiff, however, was transported to the hospital and his heart rate stabilized over the weekend. (*Id.*) In sum, Plaintiff has not sufficiently alleged that the prescription of the beta blockers or short delay in transport resulted in substantial harm. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Therefore, to the extent Plaintiff attempted to revive this claim in his amended complaint, it is dismissed.

he complained that he had repeatedly requested treatment for his HCV and it continues to go untreated. (*Id.* at 16.)

Plaintiff asserts that these three grievances were submitted to the medical staff requesting treatment for his HCV "as well as asking the provider to not allow the [HCV] to progress to a potential fatal condition." (*Id.* at 45.) The medical contractor at WCDC is Defendant Wellpath. Plaintiff alleges that Wellpath was responsible for medical care for the inmates confined at WCDC and that they are in part responsible for creating policies and customs for treating the inmates confined at WCDC. (*Id.* at 43–48.) The medical staff at WCDC were employed by Wellpath and include Defendants Amie Fabah-Ezeogu and Alicia Jones, both nurse practitioners, and Dee Dee Gregory, the administrator. Plaintiff alleges that these Defendants were aware of his HCV in 2018 and failed to provide treatment for seven years even though they were aware of the excessive risk to Plaintiff's health. (*Id.* at 41.) Plaintiff also brings claims against Jorge Dominicis, the President of Wellpath, and Jerry Boyle, the Chairman. Plaintiff asserts that these Defendants refused to allow Plaintiff Direct Acting antiviral ("DAA") medications due to the cost. Plaintiff has also asserted a *Monell* claim against Defendants the Unified Government of Wyandotte County, the Wyandotte County Board of Commissioners, and the Wyandotte County Sheriff (the "Wyandotte County Defendants"). (*Id.* at 40.)

Plaintiff alleges that he had requested DAA medications which would have resulted in a cure of his HCV. Instead, Plaintiff's HCV progressed to stage F4 and he has irreparable damage to his liver. According to Plaintiff, KU Medical Center recommended that certain testing be done on Plaintiff in order to determine the progression of Plaintiff's HCV and the need for DAA medications. Defendants knew about this recommendation and did not take action until four months after his cirrhosis diagnosis.

Plaintiff filed this action on April 19, 2024. (Doc. 1.) Plaintiff filed an amended complaint on December 8, 2025. Defendants all move to dismiss on the basis that Plaintiff's claims are barred by the statute of limitations. Alternatively, Defendants move to dismiss on the basis that Plaintiff fails to state a claim and Defendant Wellpath moves to dismiss on the basis that Plaintiff's claims were discharged in bankruptcy.

## II.    Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## III.    Analysis

### A.  Statute of Limitations

Defendants move to dismiss Plaintiff's claim against them on the basis that it is barred by the statute of limitations. "A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008). The limitations period is ordinarily governed by the forum state's limitation period for personal-injury

4

torts. *Wilson v. Garcia*, 471 U.S. 261, 279 (1985) (superseded in part on other grounds by 28 U.S.C. § 1658). In Kansas, the two-year limitation period in K.S.A. 60-513(a)(4) governs § 1983 claims. *Brown v. Unif. Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006). State law also governs any tolling of that period, although federal law might also allow equitable tolling in rare circumstances. *Mondragon*, 519 F.3d at 1082. Federal law alone determines the date on which a claim accrues – that is, the date on which the limitations period is triggered. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Mondragon,* 519 F.3d at 1082.

Under federal law, Plaintiff's claims accrued when he had "a complete and present cause of action; that is, when he could have filed suit and obtained relief." *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (quoting *Wallace*, 549 U.S. at 388). Plaintiff's claims arise under the Eighth Amendment. Therefore, those claims accrued when he knew or had reason to know that each Defendant "had acted with deliberate indifference to a known risk to [Plaintiff's] medical needs, and that his or her deliberate indifference resulted in a delay in treatment that caused [Plaintiff] substantial harm." *Id.* The claim accrued once Plaintiff knew Defendants' deliberate indifference caused him substantial harm, "even though the full extent of the injury is not then known or predictable." *Id.* (quoting *Wallace*, 549 U.S. at 391).

Here, Defendants argue that Plaintiff's claims accrued when he filed his November 2018 grievance or, at the latest, his March 25, 2019 grievance, both of which are outside of the two year limitations period.[3] In response, Plaintiff asserts that his claim did not accrue until he was diagnosed with cirrhosis in 2024 as a result of Defendants' failure to treat him. As set forth herein, the knowledge regarding the extent of Plaintiff's injury is not necessary for a claim to accrue. Rather, the question is when Plaintiff knew that Defendants acted with deliberate indifference and

---

[3] The parties do not dispute that these two grievances were filed outside of the limitations period, even considering the time period that was tolled under Kansas law due to COVID-19.

that the inaction caused him substantial harm.  Here, Plaintiff's grievances in 2018 and 2019 complain of the failure to treat his HCV.  Although Plaintiff's grievances did not explicitly state that he was at risk of developing cirrhosis, they do demonstrate that he was aware that the failure to treat his HCV could be fatal.  Notably, in the 2019 grievance, he complains of significant symptoms including nausea, vomiting, fatigue, and pain in his liver area.  He was also concerned that the failure to treat could result in his death in the form of liver cancer.  Based on Plaintiff's own grievance, which was directed at the Wellpath medical staff, Plaintiff was aware that the medical staff Defendants at WCDC had failed to treat his HCV and that this delay in treatment was causing him substantial harm even though his full injury was not yet known.

The Tenth Circuit dealt with a similar issue in *Vasquez*.  In that case, the plaintiff knew that he had chronic HCV and that it could "kill" him.  882 F.3d at 1276.  The plaintiff also knew that chronic HCV could result in progressive liver damage and that he needed treatment.  *Id.*  The plaintiff had filed several grievances regarding obtaining certain treatment.  The Tenth Circuit held that, as a result, the plaintiff knew that the failure to treat him had substantially harmed him.  Here, a similar outcome is necessary.  As of at least March 25, 2019, Plaintiff knew that the lack of treatment by the individual providers had substantially harmed him.  It is clear from his grievances that Plaintiff knew that he was deteriorating from a lack of treatment and that he would potentially die as a result.  Plaintiff continued to seek out the treatment that he was not receiving and complained about his treatment.  Therefore, the court finds that Plaintiff's § 1983 claims based on conduct prior to March 25, 2019, are barred by the statute of limitations.

That does not end the discussion, however, because Plaintiff also filed a grievance on December 9, 2022.  This grievance again alleged a failure to treat Plaintiff's HCV and asserted that Plaintiff had repeatedly requested treatment.  Based on the allegations, it is clear that the

6

individual Defendants were involved in treating Plaintiff during the two years prior to when the suit was brought. *See Vasquez*, 882 F.3d at 1277. Therefore, Plaintiff's claims regarding the failure to receive treatment that was the subject of his December 2022 grievance are timely.

### B. Failure to State a Claim

Next, Defendants argue that Plaintiff has failed to state a claim under the Eighth Amendment.[4] The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104–05; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). At this time, the alleged facts show that Plaintiff did have a serious illness requiring treatment.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison

---

[4] A claim under § 1983 also requires that the defendant act under color of state law. Defendants do not argue that the amended complaint fails to sufficiently allege that the actions were committed under state law. Although the individual Defendants were employed by a contractor, reviewing the allegations, it is clear that the individual Defendants acted under color of state law when providing medical services to inmates. *See Phillips v. Tiona*, 508 F. App'x 737, 749–50 (10th Cir. 2013).

official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1304–05 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). The test requires that Defendants "possess an actual consciousness of a risk to prisoner health and safety." *Toevs v. Milyard,* 563 F. App'x 640, 645 (10th Cir. 2014).

Defendants argue that Plaintiff has failed to sufficiently allege the subjective component as to the individual Defendants. They assert that Plaintiff's allegations merely amount to a difference of opinion on treatment methods and that it is not sufficient to state a claim. In his December 2022 grievance, Plaintiff again complains about the lack of treatment for his HCV and that he has repeatedly requested treatment. Plaintiff's amended complaint alleges that Defendants Fabah-Ezeogu, Jones, and Gregory all failed to provide the necessary treatment, were aware of Plaintiff's condition, and aware of the risks of failing to provide treatment. At this stage of the proceedings, the court finds that Plaintiff's allegations, if ultimately proven, are sufficient to support a finding that these Defendants knew of and disregarded an excessive risk to Plaintiff's health.

With respect to Dominicis and Boyle, who can be described as supervisors to staff at Wellpath, Plaintiff has alleged that they were also aware of the need for treatment but denied such treatment due to the cost. The Tenth Circuit has held that officials who are "gatekeepers for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if [he] delays or refuses to fulfill that gatekeeper role." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Although this is a "high hurdle," the court finds that Plaintiff's allegations are sufficient at this stage of the proceedings. *Id.* According to Plaintiff, these Defendants had knowledge of his condition for several years and refused to provide the DAA

8

medication due to its cost even though it would result in a cure.  As a result, Plaintiff has irreversible injury to his liver.

The court will now turn to the arguments raised by the remaining Defendants.

### C.  Wellpath's Bankruptcy

Defendant Wellpath moves to dismiss the claim against it on the basis that all claims during this time period against it were discharged in bankruptcy.  In response, Plaintiff acknowledges that the claims have been discharged but seeks to retain Wellpath as a nominal defendant.  The operative complaint, however, clearly sets forth claims against Wellpath.  In its reply, Wellpath argues that Plaintiff's suggestion of proceeding against it as a nominal party violates the bankruptcy order and that this court would lack jurisdiction over such proceedings.  (Doc. 83 at 4.)  Wellpath asserts that the Liquidating Trust and its procedures are the exclusive claims-administration procedure.  Notably, however, several courts have allowed plaintiffs to proceed against Wellpath and/or the Trust as nominal parties and that such a procedure did not violate the bankruptcy court's 11 U.S.C. § 524(a)(2) discharge injunction.  *See Est. of Canett v. Wellpath, LLC*, No. 23–CV–01211–DDD–MDB, 2025 WL 3228204, at *2–3 (D. Colo. Nov. 19, 2025) (discussing that "the Lift Stay Order provides that "holders of personal injury tort and wrongful death claims may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party[.]"); *see also Rogacki v. Wellpath, et al*., No. 1:21-cv-02281-CNS-KAS (D. Colo. Sept. 23, 2025), ECF No. 136 (citing other cases allowing a plaintiff to proceed against Wellpath and the Trust as nominal defendants and discussing that § 524(a)(2) permits suits that name the debtor but are brought to collect from a third party).  Although Wellpath argues that Plaintiff's suggestion is not appropriate,

Wellpath failed to advise the court of these recent rulings. Notably, in *Canett*, Wellpath did not oppose the motion to substitute it as a nominal party. *Id.* at \*1.

Therefore, the court grants Wellpath's motion to dismiss the claims against it but grants leave for Plaintiff to file a motion to amend to add Wellpath and/or the Trust as a nominal party to this matter. If Wellpath opposes the motion, it must advise the court of all other proceedings in which it or the Trust is named as a nominal party and whether it had opposed the motion to substitute or amend in those proceedings.

### D. Municipal Defendants

Finally, the Wyandotte County Defendants move to dismiss on the basis that Plaintiff has not sufficiently alleged a *Monell* claim against them. (Doc. 93.) In the amended complaint, Plaintiff alleges that the Wyandotte County Defendants delegated medical care of the inmates to Wellpath. Plaintiff further alleges that Wellpath violated his constitutional rights by having a policy that withheld his treatment due to the cost of that treatment. According to Plaintiff, Wellpath incentivizes the reduction of the use of DAA treatment and has a policy of monitoring an inmates' HCV instead of providing DAA which can cure HCV. (Doc. 73-1 at 48.) Plaintiff alleges that the Wyandotte County Defendants are indirectly liable to him through the non-delegable duty doctrine which holds that these Defendants cannot avoid liability by contracting out their duties to a third party. (*Id.* at 50.)

Although the Tenth Circuit has yet to address this issue, courts in this circuit have recognized that a public entity may be liable under § 1983 when it contracts out final policymaking authority to a third party. *See, e.g., Jarvis v. McLauglin*, No. 1:20-cv-02028-CNS-GPG, 2022 WL 4388399, at \*3 (D. Colo. Sept. 22, 2022). "[T]he question is not whether the County itself promulgated an unconstitutional policy or had notice of problems caused by [Wellpath]'s policy,

but whether [Wellpath] had an unconstitutional policy and otherwise satisfies the *Monell* requirements. If it does, the County can be liable because [Wellpath] stepped into the County's shoes with the County's permission." *Est. of Walter v. Corr. Healthcare Cos*., 323 F. Supp. 3d 1199, 1215-16 (D. Colo. 2018) (citing *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012)).

To establish liability against the Wyandotte County Defendants under the non-delegable duty doctrine, Plaintiff must first show that he has plausibly alleged a claim against Wellpath. To state a claim for municipal liability, Plaintiff must allege facts showing (1) the existence of an official municipal policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). If Plaintiff satisfies all three requirements, the Wyandotte County Defendants could be liable because the third party's policies are considered to have become the county's policies. *See Est. of Walter*, 323 F. Supp. 3d at 1216.

Turing to the arguments, the Wyandotte County Defendants move for dismissal on the basis that Plaintiff has failed to sufficiently allege a policy.[5] The court turns to whether Plaintiff sufficiently pled a *Monell* claim against Wellpath.

Here, Plaintiff alleges that Wellpath has a policy of not treating individuals with HCV with DAA due to the increased cost. Instead, Wellpath monitors those inmates' conditions even though it had knowledge that Plaintiff had a serious medical condition that would be cured with the use of DAA. Plaintiff alleges that Wellpath had knowledge of his condition and failed to treat him pursuant to this policy. Plaintiff has also alleged that this policy caused him injury because he

---

[5] The Wyandotte County Defendants also asserted that Plaintiff's claims were time-barred and the individual Defendants did not violate Plaintiff's rights. The court has already addressed these arguments herein.

11

now has cirrhosis and irreparable liver damage.  At this stage of the proceedings, these allegations are sufficient to show that Wellpath would be liable for violating Plaintiff's rights.

In the motion to dismiss, the Wyandotte County Defendants acknowledge that the non-delegable duty doctrine would allow Plaintiff to state a claim against it.  (Doc. 93 at 6.)  At this stage of the proceedings, because Plaintiff has sufficiently alleged a *Monell* claim against Wellpath, the contractor that the Wyandotte County Defendants utilized to provide medical care to Plaintiff, the court finds that Plaintiff has sufficiently alleged that these Defendants are also liable under §1983 as essentially adopting Wellpath's policies in providing medical care.[6]

## IV.    Conclusion

Defendants' motions to dismiss (Docs. 76, 93) are GRANTED IN PART and DENIED IN PART.  Plaintiff's claims prior to March 2019 are barred by the statute of limitations.  Wellpath's motion to dismiss the claims against it is GRANTED but Plaintiff is granted leave to file a motion to amend to add Wellpath and/or the Trust as a nominal party to this matter.  As to all other arguments, the motions to dismiss are DENIED.

Defendants' motion to strike (Doc. 87) Plaintiff's surreply is GRANTED.[7]  The clerk is to strike Doc. 86 from the record as Plaintiff failed to seek leave before filing the surreply and it exceeds this court's local rule on page limitations.

IT IS SO ORDERED.  Dated this 13th day of May, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Wyandotte County Defendants do not attempt to argue whether it is proper for all three Defendants to remain in this action.  Therefore, the court declines to consider that issue.

[7] The court notes that the arguments raised in the surreply would not have affected the ruling herein.